IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MICHELLE DAWN MURPHY,           )
                                )
          Plaintiff,            )
                                )
v.                              )   Case No. 15-CV-528-GKF-FHM
                                )
THE CITY OF TULSA,              )
                                )
          Defendant.            )

**OPINION AND ORDER**

This matter comes before the court on the First *Daubert* Motion [Doc. #184], and the Third *Daubert* Motion [Doc. #217] of plaintiff Michelle Dawn Murphy. Both motions relate to the testimony and opinions of the defendant City of Tulsa's expert, John "Jack" Ryan. For the reasons set forth below, the First *Daubert* Motion is granted in part and denied in part, and the Third *Daubert* Motion is denied.

**I.    Background**

In her First Amended Complaint, Ms. Murphy alleges she was wrongfully convicted for the murder of her infant son, Travis Wood. Her conviction was vacated by an agreed order entered in state district court in 2014. She served twenty years of a sentence of life without parole.

Ms. Murphy now asserts a claim for relief pursuant to 42 U.S.C. § 1983, alleging violations of her right to a fair trial under the Due Process Clause of the Fourteenth Amendment on seven (7) enumerated grounds, including deficiencies in the Tulsa Police Department's ("TPD") training, supervision, and policies and procedures, and of her right not to incriminate herself under the Fifth Amendment.

The City of Tulsa retained John J. Ryan as an expert witness to testify regarding the appropriateness of TPD's investigation of the murder of Travis Wood; TPD's policies, procedures and practices; and TPD's training and supervision. In her First *Daubert* Motion, Ms. Murphy moves to exclude Mr. Ryan's testimony, statements, and opinions regarding two distinct topics: (1) the training of TPD officers, and (2) the questioning of Ms. Murphy by detective Mike Cook. [Doc. #184]. In her Third *Daubert* Motion, Ms. Murphy seeks to exclude the entirety of Mr. Ryan's report and to preclude Mr. Ryan from testifying during the trial of this matter on the basis that Mr. Ryan's report is unreliable because it is not based on sufficient facts and data. [Doc. #217]. The court separately considers below Ms. Murphy's First *Daubert* Motion and Third *Daubert* Motion.

## II.     Standard

Pursuant to Federal Rule of Evidence 702,

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 imposes on the trial court an important gate-keeping obligation, "to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 578, 590 (1993)). Thus, "the trial judge must determine whether the testimony has 'a reliable basis in the

knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592).

"To determine whether an expert's opinion is admissible, the district court must undertake a two-step analysis." *Mathis v. Huff & Puff Trucking, Inc.,* 787 F.3d 1297, 1307 (10th Cir. 2015). "First, the court must determine whether the expert is 'qualified' by knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). "Second, 'the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.'" *Id.*

### III. Analysis

#### A. Ryan's Qualifications

Ms. Murphy does not challenge whether Mr. Ryan is qualified by "knowledge, skill, experience, training, or education." *See generally* [Doc. ##184, 217, 252, and 280]. Further, based on the court's review of the materials before it—specifically Mr. Ryan's *curriculum vitae* and report—the court is persuaded that Mr. Ryan is qualified by knowledge, skill, experience, training and education to provide testimony regarding TPD's training, policies and procedures. *See* [Doc. #184, p. 54 (exhibit 26)]. With regard to education, Mr. Ryan received a bachelor of science in administration of justice, a master of science in administration of justice, and a *juris doctorate* degree. [*Id.* at 99]. In addition to his formal education, Mr. Ryan received specialized law enforcement training, including training in law enforcement instructor development from the Federal Bureau of Investigation, high performance police management from the Police Management Association, and advanced tactical management from Prince William County Criminal Justice Academy. [*Id.* at p. 103]. As to practical experience, Mr. Ryan served as an active duty police officer in the Providence Police Department for twenty (20) years and obtained

the rank of captain. [*Id.* at p. 99] During his later years with the Providence Police Department, Mr. Ryan served as the Director of Administration, which included supervision of the department's training division. [*Id.*]. Mr. Ryan also previously served as an adjunct faculty member in the Administration of Justice Graduate Program at Salve Regina University in Rhode Island, and taught graduate courses on subjects such as constitutional law issues in law enforcement, police civil liability, managing police organizations, contemporary issues in the administration of justice, juvenile justice, mental health law, and business crime. [*Id.*]. Since retiring as an active duty police officer, Mr. Ryan has been involved in auditing law enforcement operations throughout the United States, and has assisted departments throughout the nation in developing policy and training. [Doc. #184, p. 64, ¶ 47]. Mr. Ryan has also authored numerous texts and articles related to law enforcement, including authoring the *Law and Best Practices for Successful Police Operations, 12 High Risk Critical Tasks*. [Doc. #184, p. 54]. Based on Mr. Ryan's education, training, experience, and knowledge, the court is persuaded that Mr. Ryan is qualified to render the opinions for which he was retained by the City of Tulsa.

        B.        <u>First *Daubert* Motion – Testimony, Statements, or Opinions Regarding TPD Training</u>

Ms. Murphy argues that Mr. Ryan's testimony and opinions regarding TPD's training should be excluded for three reasons: (1) Mr. Ryan's testimony and opinions will not help the jury understand the evidence regarding whether TPD trained its officers as to constitutional limitations and requirements, (2) Mr. Ryan did not reliably apply principles and methods to the facts of the case, and (3) Mr. Ryan did not base his opinions on reliable principles and methods. The court will separately consider each argument.

1. Relevance

Whether expert testimony or evidence will "assist the trier of fact to understand the evidence or to determine a fact in issue," goes primarily to relevance. *See Daubert*, 509 U.S. at 591. "'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Id.* (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18).

Ms. Murphy argues that "[e]xpert testimony simply is not needed to assist the jury in determining whether TPD trained its officers on the Constitutional limits of interrogations." [Doc. #184, p. 5]. The court is not persuaded.

Five paragraphs of Mr. Ryan's expert report specifically relate to training. *See* [Doc. #184, pp. 92-93, ¶¶ 112-116]. Paragraphs 112 to 115 summarize the facts upon which Mr. Ryan bases his opinion as to training, including averments of retired Tulsa police officer Kenneth Mackinson that basic training for Tulsa police officers was approximately fourteen (14) weeks followed by four (4) weeks of field training, that state statutes require forty (40) hours of training per year, that Tulsa police officers received monthly legal bulletins, and that, upon being assigned to the detective division, all new detectives received an additional 40 hours of training. Mr. Ryan's report then states:

> I note that in my experience, agencies moving into the 1990s did not conduct specialized training for officers moving from patrol into the detective function much less the homicide function. I note that I was transferred from patrol duties to detective in the mid-1980s and was given no specialized training beyond working for a few days with a veteran detective who provided orientation to the division. In the mid-1990s I developed and wrote the first curriculum for a 40 hour detective school for officers being appointed to the Investigations Bureau of the Providence Police Department. Around that same time period I was asked to assist in training new detectives in the Rhode Island State Police in what was their first such specialized school. *In accord with the affidavit of Mackinson, Tulsa was beyond the generally accepted practice with their 40-hour program in 1994 and if they continued this program they remain ahead of the generally accepted practice. I note that as I conduct audits of law enforcement agencies throughout the United*

> *States today, many agencies do not provide specialized training for officers moving to the detective or investigative function.*

[Doc. #184, p. 93, ¶ 116]. Thus, based on the Mackinson affidavit and other evidence, as well as his own experience, Mr. Ryan is offering his opinion as to whether TPD's training requirements were consistent with generally accepted practice. Further, Mr. Ryan will offer testimony regarding whether TPD's policies and procedures as to interrogation were deficient. [Doc. #184, p. 94, ¶ 117].

Ms. Murphy asserts a claim against the City of Tulsa, a municipality, for deprivation of her Fourteenth Amendment rights due, in part, to TPD's alleged failure to train its police officers regarding applicable constitutional constraints. To establish municipal liability, Ms. Murphy must prove in part, that TPD's training was inadequate and that such inadequacy "demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact." *Brown v. Gray,* 227 F.3d 1278, 1286 (10th Cir. 2000) (quoting *Allen v. Muskogee, Okla.*, 119 F.3d 837, 841-42 (10th Cir. 1997)). In the context of constitutional torts against municipalities, the Tenth Circuit has repeatedly permitted expert testimony on whether departmental training procedures comply with nationally accepted practices. *See Brown,* 227 F.3d at 1287 (citing with approval district court's admission of testimony regarding adequacy of city's training); *Allen,* 119 F.3d at 842-43 (same); *Zuchel v. City & Cnty. of Denver, Colo*., 997 F.2d 730, 742 (10th Cir. 1993) ("Courts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement.").

The court is persuaded that Mr. Ryan's opinions regarding TPD's training during the relevant time frame will assist the jury in evaluating the adequacy of TPD's training, and whether such training was in conformity with national professional standards. Accordingly, this court concludes that Mr. Ryan's testimony regarding TPD's training is relevant. To the extent that Ms.

Murphy objects to the facts upon which Mr. Ryan based his opinions, the court will discuss this objection below in connection with reliability.

Further, to the extent that Ms. Murphy objects to Mr. Ryan's opinions regarding TPD's policies and procedures (which Ms. Murphy asserts constitute a form of training)[1], this court joins other courts in concluding that, in constitutional tort cases, expert testimony regarding professional standards can be relevant and helpful. *See Elizondo-Sedillo v. City of Albuquerque,* No. 14-CV-127-JAP-LAM, 2015 WL 13534220, at *12 (D.N.M. Jan. 26, 2015). *See also Restivo v. Hessemann*, 846 F.3d 547, 579-80 (2d Cir. 2017); *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013); *Nnodimele v. Derienzo*, No. 13-CV-3461, 2016 WL 3561708, at **13-14 (E.D.N.Y. June 27, 2016); *Sanders v. City of Chicago Heights,* No. 13-C-0221, 2016 WL 1730608, at *7 (N.D. Ill. May 2, 2016). Thus, the court is also persuaded that Mr. Ryan's opinions regarding TPD's policies and procedures are relevant and will assist the jury.

2. Reliability

Ms. Murphy's arguments that Mr. Ryan did not reliably apply principles and methods to the facts of the case and that Mr. Ryan did not base his opinions on reliable principles and methods are both directed to the reliability requirement of Fed. R. Evid. 702.

In *Daubert,* the United States Supreme Court articulated four factors bearing on the reliability of expert scientific testimony, including (1) whether the theory or technique utilized can

---

[1] Relative to policies and procedures, Mr. Ryan opines, in relevant part, as follows: "It is my opinion, based upon my specialized background, education, training and experience, as well as my continued research, authoring, auditing, consulting and training on law enforcement practices nationwide, I see no evidence of any deficiency in the policies that were in place in 1994 in the Tulsa Oklahoma Police Department." [Doc. #184, p. 94, ¶ 117]. To the extent that Mr. Ryan's report includes opinions as to whether Mr. Cook's conduct violated TPD policies and procedures, the court will consider the opinions separately below, as Ms. Murphy has separately sought to exclude Mr. Ryan's opinions regarding Mr. Cook's questioning of Ms. Murphy.

or has been tested; (2) whether the theory or technique has been the subject of peer review; (3) the potential rate of error; and (4) general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593-95. However, even in *Daubert*, the Court recognized that "[t]he focus, of course, must be solely on principles and methodology, *not on the conclusions that they generate*." *Id*. at 595 (emphasis added). Further, subsequent to *Daubert*, the Supreme Court clarified that the *Daubert* factors "do *not* constitute a 'definitive checklist or test,'" and that the necessary inquiry in all cases, "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd*., 526 U.S. at 150 and 152.

Ms. Murphy attacks the reliability of Mr. Ryan's opinions regarding TPD's training and policies and procedures on the basis that Mr. Ryan relies upon the affidavit of Mackinson, which Ms. Murphy asserts is hearsay. However, this court has previously concluded that the Mackinson affidavit is not hearsay. *See* [Doc. #346]. Further, pursuant to Fed. R. Evid. 703, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, *they need not be admissible for the opinion to be admitted*." (emphasis added).

Ms. Murphy also argues that Mr. Ryan's report is unreliable because Mr. Ryan improperly did not consider evidence—specifically the testimony of Ron Palmer, Wayne Allen, and Mike Cook—and, instead, relies on the Mackinson affidavit. *See* [Doc. #184, pp. 2-9]. However, the deposition transcripts reviewed by Mr. Ryan include the depositions of Ron Palmer, Wayne Allen and Mike Cook. [Doc. #184, p. 65, ¶ 49]. Further, Ms. Murphy's arguments regarding the factual underpinnings of Mr. Ryan's opinions go to the weight, not the admissibility, of Mr. Ryan's testimony. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega v. City & Cnty. of Denver*,

No. 11-CV-02394-WJM-CBS, 2013 WL 438579, at **4-5 (D. Colo. Feb. 5, 2013). Counsel for Ms. Murphy will have the opportunity to cross-examine Mr. Ryan regarding the basis for Mr. Ryan's opinions or present conflicting evidence. However, the court will not exclude Mr. Ryan's testimony on this basis.

To the extent that Ms. Murphy seeks exclusion of Mr. Ryan's testimony on the basis that the opinions are based on *insufficient* facts, the court is not persuaded. In his report, Mr. Ryan outlines the materials which he reviewed, which included the parties' written discovery responses, TPD training documents produced by the City of Tulsa, William Lee's statement, Ms. Murphy's statement, 911 calls, the expert reports of Dr. Richard Leo and Dr. Michael Lyman, and no less than six (6) deposition transcripts. [Doc. #184, p. 65, ¶ 49]. In addition to the Mackinson affidavit, Mr. Ryan specifically cites to the deposition testimony of Sergeant Wayne Allen. Further, Mr. Ryan relies on his own training and experience in the law enforcement field. As previously noted above, Mr. Ryan served as an active duty police officer for 20 years. Since that time, Mr. Ryan has audited law enforcement departments throughout the United States, and assisted those departments in developing policy and training. Based on his experience, Mr. Ryan describes generally accepted policies and practices, and applies them to the facts of this matter. The court concludes that this is a reliable methodology. *See Bright v. Ohio Nat'l Life Assurance Corp.*, No. 11-CV-475-GKF-FHM, 2013 WL 121479, at *3 (N.D. Okla. Jan. 9, 2013).

For the same reasons, the court concludes that Mr. Ryan's testimony and opinion that TPD's policies were not deficient in 1994 is reliable. [Doc. #184, p. 94, ¶ 117]. Mr. Ryan relies on his own education, training, and experience, as well as his continued research, consulting, and training on nationwide law enforcement practices, to formulate his opinion. Mr. Ryan has written and maintains model policies in no less than twelve (12) states, [Doc. #184, p. 94, ¶ 118], and, as

previously found by the court, possesses specialized knowledge in the field of law enforcement. Mr. Ryan applied this specialized knowledge and experience to the facts of this matter, which is a reliable methodology.

Based on the foregoing, the court concludes that Mr. Ryan's testimony regarding the adequacy of TPD's training, policies and procedures in 1994 satisfies Fed. R. Evid. 702. Thus, Ms. Murphy's motion to exclude Mr. Ryan's testimony regarding these topics is denied.

    C.    First *Daubert* Motion – Testimony, Statements, or Opinions Regarding Mr. Cook's Questioning of Ms. Murphy

Ms. Murphy argues that Mr. Ryan's opinion in paragraph 97 of his report that "the questioning undertaken by Detective Cook was consistent with generally accepted policies, practices, training, and legal mandates" must be excluded because it is unreliable.[2] Specifically, Ms. Murphy argues that Mr. Ryan made impermissible credibility determinations in reaching his conclusion and improperly disregarded Ms. Murphy's statement and testimony regarding the circumstances surrounding her questioning.

As an initial matter, the court notes that Mr. Ryan's report does not include any impermissible opinions regarding Ms. Murphy's credibility. *Cf. United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) ("The credibility of witnesses is generally not an appropriate subject for expert testimony."). Rather, Ms. Murphy's primary objection is that Mr. Ryan did not rely

---

[2]Although not specifically objected to in the portion of Ms. Murphy's First *Daubert* Motion related to Mr. Ryan's opinions regarding Mr. Cook's questioning of Ms. Murphy, Ms. Murphy presumably objects as well to paragraph 120 of Mr. Ryan's report, which opines that "the actions of the arriving officers, Detective Cook, Sergeant Allen, and the Tulsa Police Department with respect to the investigation, questioning and arrest of Ms. Michelle Murphy was consistent with generally accepted policies, practices, training, and legal mandates as they existed in 1994 and 1995 when these events and the trial of Ms. Murphy occurred." [Doc. #184, pp. 97-98, ¶ 120]. The court's analysis applies equally to paragraphs 97 and 120 of Mr. Ryan's report.

upon her testimony in formulating his opinions. However, this argument goes to the factual underpinnings of Mr. Ryan's report, and is the proper subject of cross-examination—not exclusion. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega*, 2013 WL 438579, at **4-5.

In addition to the credibility issue, Ms. Murphy argues that Mr. Ryan's report must be excluded because Mr. Ryan's report ignores "the law of the land as pronounced by the Supreme Court." [Doc. #252]. This objection touches upon an issue which the court concludes requires a limitation to Mr. Ryan's testimony. Mr. Ryan opines that "the questioning undertaken by Detective Cook was consistent with generally accepted policies, practices, training, *and legal mandates*." [Doc. #184, p. 87, ¶ 97]. In the Tenth Circuit, "'[g]enerally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts.'" *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998)). Further, although the Tenth Circuit has permitted witnesses "to testify about how the law applies to a certain set of facts," such testimony is permissible only "so long as they provide adequate explanations for their conclusions." *United States v. Richter,* 796 F.3d 1173, 1196 (10th Cir. 2015).

Mr. Ryan's report includes no citations to any legal authority upon which he relies to support his opinion that Mr. Cook's questioning of Ms. Murphy was consistent with legal mandates. Thus, although Mr. Ryan may offer his opinions regarding whether Mr. Cook's conduct was consistent with, or constituted a deviation from, standard police practices and procedures, Mr. Ryan is precluded from offering any legal conclusions, including opinions as to whether Mr. Cook

violated Ms. Murphy's constitutional rights.³ *See Sanders,* 2016 WL 1730608, at *9. The court will provide necessary instruction as to the applicable law.

        D.       <u>Third *Daubert* Motion</u>

In her Third *Daubert* Motion, filed on August 9, 2017, Ms. Murphy seeks wholesale exclusion of Mr. Ryan's testimony and report on the sole basis that the report is unreliable.⁴ Ms. Murphy's position in her Third *Daubert* Motion stands in contrast with her counsel's statements in reply to Ms. Murphy's First *Daubert* Motion, filed on August 17, 2017, wherein counsel represents that the First *Daubert* Motion does not seek to preclude Mr. Ryan's testimony regarding "TPD's policies, procedures and practices" (except how Mr. Cook handled the interrogation), "the nature of TPD's investigation into the murder of Travis Wood" (except training), "crime scene response and preservation," "obtaining consent to search the premises," and "Ryan's seeing no deficiencies in policies" (except training and the interrogation). [Doc. #252, p. 9]. Though the two *Daubert* motions as to Mr. Ryan are inconsistent and in many respects duplicative, the court will consider the substantive arguments raised in Ms. Murphy's Third *Daubert* Motion.

*First,* Ms. Murphy asserts that paragraph 105 of Mr. Ryan's report "ignores that the City had no policies or training that officers must not cross certain lines in interrogations." This argument goes to the factual underpinnings of Mr. Ryan's report, and is the proper subject of cross-

---

³Although Ms. Murphy's objection to Mr. Ryan's testimony regarding legal mandates appears to be limited to Mr. Ryan's opinions regarding Mr. Cook's conduct during his questioning of Ms. Murphy, the court will generally exclude Mr. Ryan's opinions regarding whether the City of Tulsa or any of its employees violated legal mandates.

⁴ Again, Ms. Murphy does not question Mr. Ryan's qualifications. And, unlike her First *Daubert* Motion, relevance is not raised in her third motion.

examination—not exclusion. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega*, 2013 WL 438579, at **4-5

*Second,* Ms. Murphy objects to paragraph 120 of Mr. Ryan's report on the basis that the report ignores Ms. Murphy's deposition testimony.[5] The court addressed this argument in its analysis of Ms. Murphy's First *Daubert* Motion and the same reasoning applies here.

*Third,* Ms. Murphy objects to paragraph 117 of Mr. Ryan's report (regarding TPD policies and procedures), on the basis that it disregards Mr. Palmer's testimony and other evidence.[6] The court also addressed this argument in its analysis of Ms. Murphy's First *Daubert* Motion and the same reasoning applies here.

*Fourth,* Ms. Murphy objects to paragraph 116 of Mr. Ryan's report (regarding training) on the basis that it fails to consider Mr. Palmer's testimony. The argument was one of the primary subjects of the court's discussion in its analysis of Ms. Murphy's First *Daubert* Motion and the same reasoning applies here.

*Fifth,* Ms. Murphy objects to paragraph 108 of Mr. Ryan's report on the basis that it fails to consider Ms. Murphy's deposition testimony, and that Mr. Ryan's statement is an attempt to mislead the court. It is clear from the report that Mr. Ryan did, in fact, review Ms. Murphy's deposition and statement. [Doc. #184, pp. 65-66, ¶ 49]. This argument goes to Mr. Ryan's

---

[5]This argument is included in both subsections C and D of Ms. Murphy's Third *Daubert* Motion. Additionally, Ms. Murphy objects to the entirety of Mr. Ryan's report due to its alleged failure to address Ms. Murphy's deposition testimony regarding her interrogation. Ms. Murphy raised the same items which were allegedly not considered by Mr. Ryan in her First *Daubert* Motion and reply in support of same. Thus, the court addressed this argument with respect to the First *Daubert* Motion, and the same analysis applies here.

[6]The argument is included in both subsections F. and G. of Ms. Murphy's Third *Daubert* Motion.

credibility and the weight to be given to Mr. Ryan's report, not its admissibility. The court will not exclude the report on this basis. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega*, 2013 WL 438579, at **4-5. Counsel will have an opportunity to cross-examine Mr. Ryan with regard to Ms. Murphy's statements.

*Sixth,* Ms. Murphy generally objects to the report as being "conclusory," based on Mr. Ryan's purported failure to consider evidence regarding William Lee. Although Ms. Murphy's counsel may have fodder for cross-examination on the basis of the Lee evidence to the extent such evidence is admissible, they do not have a basis for exclusion of Mr. Ryan's report. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega*, 2013 WL 438579, at **4-5.

*Seventh*, Ms. Murphy argues that Mr. Ryan's report should be excluded based on Mr. Ryan's alleged failure to address nineteen (19) "facts"—items which Ms. Murphy characterizes as "other indicia of unreliability."[7] However, but for a single citation to Mr. Palmer's deposition testimony, Ms. Murphy does not include any citations in support of her "facts." Further, all but three (3) of the items allegedly not dealt with by Mr. Ryan were previously raised by Ms. Murphy—either in her First *Daubert* Motion or Third *Daubert* Motion—and addressed by this court herein.[8] Thus, the same analysis applies here.

Paragraph nos. 11, 12, and 19 in the section entitled "Other Indicia of Unreliability" have not been previously raised by Ms. Murphy. In paragraph no. 11, Ms. Murphy argues that the report

---

[7] Although similarly styled, unlike the other 19 paragraphs, paragraph 20 does not set forth any evidence that Mr. Ryan's report purportedly fails to "deal with" but, instead, summarizes Ms. Murphy's objections regarding Mr. Ryan's opinions. Counsel for Ms. Murphy will have the opportunity to cross-examine Mr. Ryan regarding the content of paragraph 20.

[8] "Other Indicia of Unreliability" nos. 1, 2, 3, 4, 5, 6, 7, 8, 13, 14, 15, 16, 17, and 18 were previously raised in Ms. Murphy's First *Daubert* Motion. "Other Indicia of Unreliability" nos. 9 and 10 were raised by Ms. Murphy in her Third *Daubert* Motion.

does not address the fact that the taped confession was inadmissible evidence and started over. Paragraph no. 12 asserts that the report does not reflect that there may have been unforced entry into Ms. Murphy's apartment. Paragraph no. 19 argues that Mr. Ryan's report relies only on Mr. Cook's trial testimony, and does not consider later statements by Mr. Cook regarding his own trial testimony. The court concludes that the arguments in these three paragraphs go to the weight to be given to Mr. Ryan's report, not its admissibility. Thus, the court will not exclude the report on this basis. *See Elizondo-Sedillo,* 2015 WL 13534220, at *9; *Ortega*, 2013 WL 438579, at **4-5.

As previously discussed with regard to the First *Daubert* Motion, Mr. Ryan is a qualified expert and his method of reviewing the numerous documents provided by the City, and applying Mr. Ryan's general knowledge of standard policies and procedures based on his training and experience is a reliable method. Accordingly, the court is not persuaded that Mr. Ryan's report and testimony should be wholly excluded.

WHEREFORE, the First *Daubert* Motion is granted in part and denied in part [Doc. #184], and the Third *Daubert* Motion is denied [Doc. #217]. Mr. Ryan may offer his opinions consistent with this order.

DATED this 18th day of January, 2018.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT