# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE DAWN MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-CV-528-GKF-FHM |
| | ) |
| THE CITY OF TULSA, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the court on the "Motion *in Limine* Number Sixteen: To Exclude Any Reference to the LaRoye Hunter Case" [Doc. #226] of defendant the City of Tulsa. For the reasons discussed below, the motion is granted in part and denied in part.

**I.     Background**

In her First Amended Complaint, Ms. Murphy alleges she was wrongfully convicted for the murder of her infant son, Travis Wood. Her conviction was vacated by an agreed order entered in state district court in 2014. She served twenty years of a sentence of life without parole.

Ms. Murphy now asserts a claim for relief pursuant to 42 U.S.C. § 1983, alleging violations of her right to a fair trial under the Due Process Clause of the Fourteenth Amendment on seven (7) enumerated grounds, including deficiencies in the Tulsa Police Department's ("TPD") training, supervision, and policies and procedures, and of her right not to incriminate herself under the Fifth Amendment based on her interrogation by detective Mike Cook. In support, Ms. Murphy alleges, in part, as follows:

> Approximately five years earlier, Cook interrogated an [*sic*] 17 year old in a murder case, threatening and yelling at him (hereafter the "Earlier Case"). This interrogation produced a confession, even though the 17 year old had been

interrogated earlier that day by other police officers and denied any involvement in 32 pages of transcribed statement. After 40 minutes in Cook's hands, he confessed. Cook denied, but the judge believed, Cook threatened the juvenile and used racial slurs and obscenities in the unrecorded portion of Cook's interrogation alone with the juvenile. Associate District Judge Bill Beasley suppressed the confession in 1994, noting how infrequently he did that. The *Tulsa World* ran a story on 8-31-94 concerning Judge Beasley's suppression of the confession, reciting the facts set forth just above. When the charge was dismissed, on 9-1-90, the *Tulsa World* ran another story reciting the same reasons for suppression of the confession. With the publication of those two articles, alone, the Final Policymaker for the TPD had constructive notice of Cook's improper interrogation techniques.

\*\*\*

Cook's actions in the Earlier Case involved lying to the court about the methods he used to obtain a confession in a homicide case. The Final Policymaker thereby knew he had an officer on his hands who would do anything to frame a person in a homicide case, not just lie in court. A police officer who lies in court and obtains confessions by Unconstitutional methods, by definition, has pronounced proclivities for the pusilanimous pursuit of power. In short, he is a power maniac. And if immediate termination is not required, then the closest possible supervision, extensive training, and thorough policies are required if that officer is allowed to work on homicide cases in the future. Cook being allowed to proceed in Michelle's case, and do the same thing he did in the earlier case, is a ratification and endorsement of Cook's conduct, without more.

\*\*\*

After the Earlier Case, in light of Cook lying under oath in court, trying to frame someone in a murder case, and usage of techniques for interrogation long since banned by the United States Supreme Court, the need for action concerning Cook serving in the future as investigator, lead investigator or interrogator was "so obvious, and the inadequacy so likely to result in the violation of Constitutional rights, that the [Chief of Police and the Head of the Homicide Bureau] can reasonably be said to have been deliberately indifferent to the need."

\*\*\*

The Earlier Case put the Final Policymaker on notice that TPD needed policies, training and supervision, on a general basis, to prevent its interrogators from engaging in the conduct described by the suspect in the Earlier Case. That case also put TPD on notice of the necessity of videotaping or audio taping the entirety of an interrogation, at least in a first degree murder or other types of homicide cases, given their possible punishments. The Final Policymaker's failure to take action to put in place adequate policies, training and supervision, at least in first degree

murder or other types of homicide cases was deliberately indifferent to the need to
have same.

[Doc. #36, ¶¶ 58, 246, 390, and 403]. The "Earlier Case" refers to *State of Oklahoma v. LaRoye C. Hunter, III,* Tulsa County Case No. CF-1989-5196. ("Hunter Case"). In 1989, LaRoye Hunter was charged with Murder, First Degree and Arson, First Degree in the District Court of Tulsa County. [Doc. #175-50].[1] At the time he was charged, Mr. Hunter was seventeen (17) years old. Mr. Cook participated in Mr. Hunter's interrogation, and was present when Mr. Hunter confessed. However, Mr. Hunter's confession was subsequently suppressed, and the charges against Mr. Hunter were dropped. Prior to the charges being dropped, Mr. Hunter was represented by then-Tulsa County Public Defender Loretta Radford.

## II.     Analysis

The City of Tulsa moves to exclude "any evidence or mention of" the Hunter Case, arguing that no admissible evidence exists as to the reason behind the suppression of Hunter's confession and, therefore, the Hunter Case is irrelevant to the issues presented in this matter. In response, Ms. Murphy cites deposition testimony taken in this case of Ms. Radford, together with newspaper articles dated August 1, 1990 from the *Tulsa World* and *Tulsa Tribune*, and argues that these items are admissible for five separate reasons: (1) impeachment of Mr. Cook (subsection II.B., II.C., II.E., and II.H.); (2) to demonstrate Mr. Cook's reputation among his associates and community as to his character pursuant to Fed. R. Evid. 803(21) (subsection II.D.); (3) to refresh Mr. Cook's recollection (subsection II.F.); (4) impeachment of retired Tulsa Police Office Ken Mackinson

---

[1] The court takes judicial notice of matters that are public record in the Hunter Case. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

(subsection II.G.); and (5) as evidence of the absence of policies, training and supervision and the presence of deliberate indifference (subsection II.A.).[2] In reply, the City again asserts that the Hunter Case is factually distinct from Ms. Murphy's case, and therefore irrelevant, and that the proffered evidentiary items are hearsay and speculative.

   A.   *Hearsay Objection*

The court will first consider whether the newspaper articles are hearsay. Federal Rule of Evidence 801 defines "hearsay" as a statement that "the declarant dos not make while testifying at the current trial or hearing," and which is offered into evidence "to prove the truth of the matter asserted in the statement." The court agrees that "[g]enerally, newspaper articles are inadmissible hearsay." *Reynolds v. City of Poteet*, No. 12-CV-1112-DAE, 2014 WL 1355560, at *7 (W.D. Tex. Apr. 4, 2014). However, the court must examine the "Statements in Ancient Documents" exception to the rule against hearsay.

Federal Rule of Evidence 803 recognizes twenty-four categories of statements which are not excluded by the rule against hearsay, regardless of the availability of the witness. Pursuant to subsection (16), entitled Statements in Ancient Documents, "[a] statement in a document that was prepared before January 1, 1998, and whose authenticity is established," is not excluded by the hearsay rule.

Here, the newspaper articles were prepared before January 1, 1998. Further, pursuant to Federal Rule of Evidence 902(6), newspapers and periodicals are self-authenticating. Because the

---

[2] In her response to the City's sixteenth motion *in limine*, Ms. Murphy represents that she "will not make any claim that Hunter's confession was obtained in violation of the state statute on the presence of a parent, lawyer or legal guardian being required for juveniles." [Doc. #297, p. 11]. Accordingly, to the extent that the City's sixteenth motion *in limine* seeks an order precluding Ms. Murphy from offering evidence of the Hunter Case to demonstrate that Mr. Cook violated 10 O.S. 1991 § 1109(a), the City's motion is moot.

newspaper articles were prepared before January 1, 1998 and their authenticity is established, the newspaper articles are ancient documents, and, as such, are not categorically excluded by the hearsay rule.

However, the court's inquiry does not end there. The newspaper articles include quoted statements from parties other than the author-declarant and, therefore, include hearsay within hearsay. Pursuant to Federal Rule of Evidence 805, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." *See Hicks v. Charles Pfizer & Co., Inc*., 466 F. Supp. 2d 799, 807 (E.D. Tex. 2005) ("Better reasoned authority indicates that the ancient documents exception permits the introduction of statements only where the declarant is the author of the document. Even if a document qualifies as ancient under Rule 803(16), other hearsay exceptions must be used to render each individual layer of hearsay admissible. This interpretation best reconciles the underlying justifications of Rule 803(16) with the limitations of Rule 805."). *See also New England Mut. Life Ins. Co. v. Anderson,* 888 F.2d 646, 650 (10th Cir. 1989) (upholding exclusion of statements reported in newspaper article as inadmissible hearsay). As previously stated, the newspaper articles fall within the exception for ancient documents. However, as to the statements of other declarants (apart from the author), Ms. Murphy has not shown that any other hearsay exception applies. Accordingly, the Motion *in Limine* is granted, in part, with regard to portions of the newspaper articles attributable to declarants other than the author.

The court will next consider whether the newspaper articles, as well as Ms. Radford's testimony, regarding the Hunter Case are admissible for the purposes asserted by Ms. Murphy.

### B.     *Impeachment of Mike Cook*

Ms. Murphy argues that the newspaper articles and Ms. Radford's testimony may be used to impeach Mr. Cook's testimony.  To determine this issue, the court must consider two general categories of evidence: (1) testimony regarding Mr. Cook personally bearing on the Hunter Case, and (2) extrinsic evidence regarding the Hunter Case.

#### 1.     Pertinent Federal Rules of Evidence

Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, pursuant to Rule 404(b), evidence of prior crimes, wrongs, or acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Further, "[e]vidence of a witness's character may be admitted under Rules 607, 608, and 609." Fed. R. Evid. 404(a)(3).

Federal Rule of Evidence 608(a) permits the admission of "testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character" but only after the witness's character for truthfulness has been attacked. Fed. R. Evid. 608(a).  The Tenth Circuit has held "[i]n order to establish an appropriate foundation, a witness testifying under Rule 608(a) must show 'such acquaintance with the [person under attack], the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded.'" *United States v. Bedonie*, 913 F.2d 782, 802 (10th Cir. 1990) (alteration in original) (quoting *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1552 (10th Cir. 1988)), *overruled on other grounds by, United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006).

Rule 608(b) generally precludes the admission of extrinsic evidence to prove specific instances of a witness's conduct to attack or support the witness's character for truthfulness. However, the Rule provides the court discretion to permit cross-examination regarding the specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b). Further, Rule 608's prohibition against specific instances of conduct to attack or support a witness's character does not apply to "specific-contradiction" evidence. *See United States v. Crockett,* 435 F.3d 1305, 1313 (10th Cir. 2006). Pursuant to the "specific contradiction" doctrine, when a witness makes a false statement during direct testimony, extrinsic evidence may be used to prove that the witness lied, "even if the evidence . . . ordinarily might be collateral or otherwise inadmissible." *Id.*

2. Testimony Regarding Mike Cook Personally

Ms. Murphy seeks to admit the following testimony of Ms. Radford regarding Mr. Cook's reputation:

> Q: At the time you were cross-examining Mike Cook [1990], did he have a reputation in the community for coming into Court and not telling the truth about methods he used to obtain confessions?
>
> A: That's accurate. That was the reputation in the legal defense bar.

[Doc. #297, p. 3].[3] Ms. Radford worked in the Tulsa Public Defender's Office from late 1988 to 1995. [Doc. #175-49, p. 4:1-12]. She is now an Assistant United States Attorney in this district. Mr. Cook was employed by the Tulsa Police Department during that same period. [Doc. #175-12, pp. 648:25 to 649:2]. Thus, Ms. Radford and Mr. Cook were contemporaries in the Tulsa law

---

[3] The portion of Ms. Radford's deposition transcript containing this testimony was not provided to the court. Rather, counsel for Ms. Murphy included the above testimony in her Sixteenth Motion *in Limine* and, by signing the motion, has represented that the testimony is accurate pursuant to Fed. R. Civ. P. 11.

enforcement and legal community. The court is persuaded that Ms. Murphy has established that Ms. Radford has shown such acquaintance with Mr. Cook in 1994 so as to speak with authority of the terms in which he was generally regarded at that time. Because Ms. Radford's testimony bears directly on Mr. Cook's character for truthfulness or untruthfulness, if Mr. Cook's character is attacked, Ms. Murphy may introduce Ms. Radford's above-quoted testimony pursuant to Rule 608(a).

However, Ms. Murphy also seeks to introduce Ms. Radford's testimony that:

> Cook's role was, or his MO, was that he always played good cop/bad cop. So during that 40-minute gap, one of the things I tried to establish at that hearing is that he was playing the cop role where "Everything is going to be fine. You just need to tell us what happened, We'll let you go home to your parents." In fact, I believe my client testified that they told him he could go home if he just told them the truth and told them what happened. And of course, at that point, his sole motivation was to go home.

[Doc. #297, p. 4].[4] The court concludes that this testimony does not bear on Mr. Cook's character for truthfulness or untruthfulness and, therefore, is inadmissible pursuant to Rule 608. Nor is the testimony is admissible to prove conduct in conformity pursuant to Rule 404.

### 3. Extrinsic Evidence Regarding Mr. Cook's Conduct in the Hunter Case

Ms. Murphy argues that extrinsic evidence regarding Mr. Cook's conduct in the Hunter Case is admissible to impeach Mr. Cook's testimony regarding his "knowledge that innocent people confess" and his conduct during prior interrogations.

First, to the extent that Ms. Murphy seeks to use the newspaper articles and Ms. Radford's testimony in response to questioning by Ms. Murphy's counsel regarding whether innocent people

---

[4] The portion of Ms. Radford's deposition transcript containing this testimony was not provided to the court. Rather, counsel for Ms. Murphy included the above testimony in her Sixteenth Motion *in Limine* and, by signing the motion, has represented that the testimony is accurate pursuant to Fed. R. Civ. P. 11.

- 8 -

confess, the court is unpersuaded. Ms. Murphy asserts that, in response to deposition questioning regarding whether anyone innocent had confessed to him, Mr. Cook responded that it had never happened to him. However, Ms. Murphy contends that "Cook should at least have told the jury in Michelle's criminal trial that he had heard that innocent people confess, or otherwise bring up the LaRoye Hunter case and what Judge Beasley did in throwing out the confession." [Doc. #297, p. 7]. However, Ms. Murphy provides no evidence that Mr. Hunter was actually innocent, that Judge Beasley suppressed the confession due to actual innocence, or that the charges against Mr. Hunter were dropped for that same reason. Rather, the state court docket indicates that the charges were dropped due to the failure of a prosecuting witness to appear. [Doc. #175-50, p. 10]. Further, Judge Beasley suppressed Mr. Hunter's confession due to a 40-minute gap in the taped interrogation, as well as other unspecified problems with the testimony. Accordingly, the hearsay evidence identified by Ms. Murphy is insufficient to impeach Mr. Cook's testimony regarding his conduct in the Hunter Case and "his knowledge that innocent people confess."

Second, with regard to impeachment of Mr. Cook's testimony regarding his prior conduct in confessions, Ms. Murphy generally argues that the Hunter Case bears on Mr. Cook's credibility—particularly his deposition testimony regarding whether, during interrogations, Mr. Cook was insensitive to juveniles or persons with intellectual or emotional disabilities—and his prior interrogation record. The court is not persuaded.

Pursuant to Rule 404(b)(1), extrinsic evidence regarding the Hunter Case is not admissible to prove that Mr. Cook acted in conformity with his prior conduct when interrogating Ms. Murphy. Nor is the court persuaded that the extrinsic evidence is admissible under Rule 404(b) for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Further, the court concludes that extrinsic evidence

regarding Mr. Cook's conduct in the Hunter Case is not evidence bearing on Mr. Cook's reputation for having a character for truthfulness or untruthfulness so as to be admissible under Rule 608.[5]

However, to the extent that Mr. Cook's testimony is contrary to evidence regarding the Hunter Case (for example, if Mr. Cook were to testify, to his knowledge, no confessions obtained by him have been suppressed), the prohibitions of Rule 608 do not apply, and the evidence may be admissible to contradict such testimony. *See Crockett,* 435 F.3d at 1313.

    C.    *Mr. Cook's Reputation Among his Associates and Community as to His Character Pursuant to Fed. R. Evid. 803(21)*

Ms. Murphy argues that Rule 803(21) permits the admission of testimony concerning Mr. Cook's reputation among his associates as to his character. As previously stated, Ms. Radford's testimony regarding Mr. Cook's reputation for untruthfulness is admissible. However, with regard to Ms. Radford's testimony regarding Mr. Cook's "MO" of playing good cop/bad cop, Rule 803(21) "simply forestalls a hearsay objection; it does not make reputation character evidence admissible. The admissibility of character evidence, including reputation evidence of character, is primarily determined by other Evidence Rules." 5 Matthew Bender, *Weinstein's Federal*

---

[5]Ms. Murphy argues that Judge Beasley declared that Hunter was "credible" and, therefore, Judge Beasley must have concluded that Mr. Cook was not credible. [Doc. #297, pp. 9-10]. However, the court is not persuaded, particularly as Ms. Radford testified as follows:

> Q:    At the hearing where you were presenting your motion to suppress, did Judge Beasley say anything about the credibility of Mike Cook?
>
> A:    I really don't recall him phrasing it in terms of credibility. He just said, what the article of course has opined to, has stated, I recall Judge Beasley being very careful not to disparage the officer. And what he said was something to the effect of, "I just have some problems with some of the testimony here today as well as the gap in the tape."

[Doc. #175-49, pp. 14:20-25 to 15:1-3]. Ms. Radford went on to describe the problems with the testimony as being the gap in the tap and the evidence of Mr. Hunter's intellectual disability.

*Evidence* § 803.23 (2d ed. 2011). For the reasons discussed above, Ms. Radford's testimony regarding Mr. Cook's "MO" is inadmissible character evidence.

  D. *Refreshment of Mr. Cook's Recollection*

Ms. Murphy argues that evidence concerning the Hunter Case (primarily, it appears, the newspaper articles) should be admissible to refresh Mr. Cook's recollection as Mr. Cook testified at his deposition that he does not recall Mr. Hunter's interrogation. Federal Rule of Evidence 612 permits an adverse party to use a writing to refresh a witness's memory, either while the witness is testifying or prior to the witness's testimony. Fed. R. Evid. 612. However, pursuant to Rule 612, "[i]t is the witness' refreshed recollection of the facts, not the contents of the writing used to refresh the recollection, that is the substantive evidence of a fact." *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1123 (D. Colo. 2008) (citing *Rush v. Ill. Cent. R.R. Co.,* 399 F.3d 705, 708 (6th Cir. 2005)). "Using the guise of 'refreshing recollection' to admit the contents of a document as substantive evidence instead is improper, as it implicates the concerns underlying the hearsay rule." *Id.* Thus, any writings used at trial to refresh recollection would not be admissible.

  E. *Impeachment of Retired Tulsa Police Office Ken Mackinson*

In an affidavit submitted to this court, Mr. Mackinson avers, "[t]o my knowledge, Detective Cook never coerced a confession, obtained a false confession or violated any suspect's Constitutional rights." [Doc. #175-40, p. 2]. Ms. Murphy seeks to admit the Hunter Case evidence to impeach this statement. However, Ms. Murphy offers no evidence that Mr. Mackinson had any knowledge that Mr. Hunter's confession was subsequently suppressed. Thus, at this time, the court concludes that references to the Hunter Case are not admissible to impeach Mr. Mackinson. However, this order does not prejudice Ms. Murphy's ability to later seek to impeach Mr. Mackinson with the Hunter Case evidence, if the proper foundation is laid.

> F. *Evidence of Absence of Policies, Training and Supervision and the Presence of Deliberate Indifference*

Ms. Murphy argues that evidence or testimony regarding the Hunter Case is relevant to whether the City had unconstitutional policies or customs, including failure to train. [Doc. #297, pp. 5-7].

As previously stated, evidence of other acts is admissible pursuant to Rule 404(b) for non-propensity related purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Evidence or testimony regarding the Hunter Case may be relevant to proving the existence of a municipal policy or custom and TPD's alleged lack of training with regard to interrogations. *See Payne v. Myers*, No. 14-CV-39-GKF-TLW, 2016 WL 3884169, at *3 (N.D. Okla. Jan. 21, 2016); *Cox v. Glanz*, No. 11-CV-457-JED-FHM, 2014 WL 916646, at *4 (N.D. Okla. Mar. 10, 2014) ("The court agrees that incidents before Mr. Jernegan's incarceration and death may be relevant both to reflect the existence of a municipal policy or custom and to provide evidence of notice to the defendant of practices at the Jail that put inmates like Mr. Jernegan at serious risk of harm.").

At this stage of the pretrial proceedings, the court concludes that the nonhearsay evidence relating to the Hunter Case shall not be stricken, and the City's relevance and Rule 403 objections may be revisited at trial.

WHEREFORE, the City of Tulsa's Motion in *Limine* Number Sixteen: To Exclude Any Reference to the LaRoye Hunter Case [Doc. #226] is granted in part and denied in part.

DATED this 1st day of February, 2018.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT